**MISTER DISCOUNT STOCKBROKERS, INC. and William F. Miller, Petitioners,**

**v.**

**SECURITIES AND EXCHANGE COMMISSION, Respondent.**

No. 83–2378.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 10, 1982.

Decided July 22, 1985.

Theodore H. Amshoff, Jr., Amshoff & Amshoff, Louisville, Ky., for petitioners.

Ruth Eisenberg, S.E.C., Washington, D.C., for respondent.

Before ESCHBACH, POSNER, and COFFEY, Circuit Judges.

COFFEY, Circuit Judge.

William F. Miller and Mister Discount Stockbrokers, Inc. petition this court, pursuant to section 25(a)(1) of the Securities Exchange Act of 1934, 15 U.S.C. § 78y(a)(1), to review an order of the Securities Exchange Commission. We affirm the order of the Commission.

## I

The Securities and Exchange Commission ("Commission") is a federal agency charged with the regulation of the securities industry. Due to the size of the industry, the Commission relies upon the industry members to aid in the enforcement of federal securities laws. Although regulatory and final authority ultimately rests with the Commission, associations of securities broker dealers registered with the Commission pursuant to section 15A(a) of the Securities Exchange Act, 15 U.S.C. § 78o–3(a), are empowered to enforce association members' compliance with federal securities laws, Commission regulations, and the association's own rules and regulations by imposing an appropriate sanction. 15 U.S.C. § 78o–3(b)(7).

The National Association of Securities Dealers ("NASD") is a registered association of securities broker-dealers, which, when enforcing members' compliance with applicable rules and regulations, must "provide a fair procedure for the disciplining of members and persons associated with members...." 15 U.S.C. § 78o–3(b)(8). The disciplinary process established by the NASD provides that the NASD Regional District Business Conduct Committee ("District Committee") has original jurisdiction of all complaints regarding member violations, and may conduct hearings, make findings, and impose penalties. Any final action taken by the District Committee is, upon timely application of an aggrieved party, subject to review by the NASD Board of Governors, which considers the record before the District Committee and "such other evidence as it may deem relevant" and may in turn either affirm, reverse, or modify the action taken by the District Committee. Any final disciplinary sanction imposed by the Board of Governors is subject to review by the Commission, 15 U.S.C. § 78s(d), and final orders of the Commission are reviewable only in the United States Courts of Appeals. 15 U.S.C. § 78y(a).

In 1977, Mister Discount Stockbrokers, Inc. ("Mister Discount") began conducting business as a discount broker-dealer with William F. Miller as its chief executive officer and sole operating principal and joined the NASD. In March, 1980, the NASD received a letter from Mister Discount's certified public accountant informing the NASD that a deficiency of some $9,000.00 existed in Mister Discount's special reserve account, resulting in a violation of Commission Rule 15c3–3, 17 C.F.R. § 240.15c3–3. On April 9, 1980, the NASD and the Commission commenced a joint examination of Mister Discount's financial records and discovered serious irregularities and violations of both the rules of the NASD and the Commission.

The District Committee of the NASD filed a complaint against Mister Discount and William F. Miller on July 24, 1980 alleging four separate violations of the NASD Rules of Fair Practice. The first count of the complaint alleged that Mister Discount and Miller violated Sections 1 and 18 of Article III of the NASD Rules of Fair Practice by engaging in a general securities business, impliedly representing that Mr. Discount could deal fairly with the public, while they neither knew nor could have known the true net capital condition of Mr. Discount due to its deteriorating

operational and financial condition. The second count alleged that the petitioners violated Sections 1, 18, and 27 of Article III by failing to take necessary and required steps to remedy the deteriorating financial condition of Mr. Discount, and failed to adequately supervise the operation of Mr. Discount to assure compliance with the applicable regulations. The third count alleged that petitioners violated Sections 1, 18, and 21 of Article III by failing to comply with various provisions of Commission rules regarding keeping accurate financial records and an adequate reserve account. The fourth count alleged that the petitioners violated Section 1 of Article III by violating a restrictive agreement between the petitioners and the Commission and the NASD that had been entered on April 9, 1980. A subcommittee of the District Committee conducted an evidentiary hearing and found that Mister Discount and Miller had violated the Rules of Fair Practice as charged in the first three counts, but dismissed the fourth count. The District Committee censured Mister Discount and Miller, expelled Mister Discount from the NASD, and further barred Miller from associating as a registered principal with any NASD member or from functioning in a supervisory position with an NASD member.

Miller and Mister Discount appealed the decision of the District Committee to the NASD Board of Governors, which in turn modified the District Committee's findings with a dismissal of that portion of the third count based on a finding of an intent to defraud. The Board of Governors affirmed all other findings along with the sanctions imposed by the District Committee. The petitioners next appealed the decision of the Board of Governors to the Commission. The Commission set aside the findings of violations of certain Commission reporting rules that were included in the third count, but otherwise affirmed the findings and sanctions of the Board of Governors. Miller and Mister Discount have now petitioned this court, pursuant to 15 U.S.C. § 78y(a)(1), to review the order of the Commission, claiming that the disciplinary pro-

cedures of the NASD violated various of the petitioners' due process rights, and that the sanctions imposed were excessive and inappropriate.

## II

### A. DUE PROCESS

■ The petitioners allege that their rights to due process of law under the Fifth Amendment to the Constitution have been violated in that: 1) the NASD prosecutorial staff initially selected the members of the District Committee hearing panel; 2) the NASD prosecutorial staff participated *ex parte* in the deliberations of the hearing panel and the District Committee; 3) the NASD prosecutor drafted the NASD decision; 4) the NASD adjudication was based on subjective criteria rather than on objective laws, rules, and regulations; and 5) the NASD disciplinary procedures did not adequately provide for discovery prior to the disciplinary hearing. As we have previously stated:

"This court does not review actions of the [NASD] because [NASD] disciplinary actions 'are subject to full review by the Securities and Exchange Commission ..., with a hearing before it if requested, the taking of further evidence it may deem relevant, and a decision based on its own findings.' *Nassau Securities Service v. Securities and Exchange Commission,* 348 F.2d 133 (2d Cir.1965). Our role is to review the order of the Commission. We will consider errors in [NASD] proceedings 'only if and to the extent that they infected the Commission's action by leading to error on its part.' *R.H. Johnson & Co. v. Securities and Exchange Commission,* 198 F.2d 690, 695 (2d Cir.), *cert. denied,* 344 U.S. 855, 73 S.Ct. 94, 97 L.Ed. 664 (1952)."

*Schultz v. Securities and Exchange Commission,* 614 F.2d 561, 568 (7th Cir.1980). In addition, section 25(c)(1) of the Securities Exchange Act provides that objections not raised before the Commission may not be considered by this court on appeal unless the petitioner is able to establish reason-

able grounds for his failure initially to raise those objections before the Commission. 15 U.S.C. § 78y(c)(1). This waiver provision is of no less import when the questions presented for the first time on appeal involve due process claims. *See Securities and Exchange Commission v. Waco Financial, Inc.*, 751 F.2d 831, 834 (6th Cir. 1985); *Schultz*, 614 F.2d at 569. Of the five alleged deprivations of due process rights the petitioners present to this court, only the challenge to the lack of adequate discovery procedures had been raised before the Commission. Petitioners have offered no explanation for having failed to raise their other due process claims before the Commission. Thus, this court considers petitioners to have waived those claims not raised before the Commission and will consider only whether the discovery procedures afforded petitioners violated their rights to due process of law.

The thrust of petitioners' argument concerning the discovery procedures is that, because the NASD disciplinary procedures are quasi-criminal in nature due to their penal aspects, the petitioners were entitled to examine exculpatory evidence in the possession of the NASD prior to the hearing before the District Committee. Since NASD procedures do not require the disclosure of exculpatory evidence, the petitioners contend that their rights to due process were violated. We hold the petitioners' argument to be without merit.

Petitioners rely solely on *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), in which the Court held that the prosecutor's suppression of "evidence favorable to an accused [in a criminal case] upon request violates due process where the evidence is material...." *Id.* at 87, 83 S.Ct. at 1196. *Brady v. Maryland*, however, involved a criminal prosecution, while the petition currently before the court involves the review of an administrative agency proceeding and not a violation of the criminal law. The difference is significant. Neither the Federal Rules of Civil Procedure nor the Federal Rules of Criminal Procedure apply to administrative hearings, and the Administrative Procedure Act fails to provide for discovery. Instead,

"[t]he extent of discovery that a party engaged in an administrative hearing is entitled to is primarily determined by the particular agency." *McClelland v. Andrus*, 606 F.2d 1278, 1285 (D.C.Cir.1979). "Nevertheless, the due process clause does insure the fundamental fairness of the administrative hearing." *Silverman v. Commodity Futures Trading Commission*, 549 F.2d 28, 33 (7th Cir.1977). *See also Withrow v. Larkin*, 421 U.S. 35, 46, 95 S.Ct. 1456, 1464, 43 L.Ed.2d 712 (1975); *McClelland*, 606 F.2d at 1286. Consequently, "discovery must be granted if in the particular situation a refusal to do so would so prejudice a party as to deny him due process." *McClelland*, 606 F.2d at 1286.

■ Based upon a review of the entire record we conclude that the petitioners have failed to demonstrate *any* prejudice arising from the discovery procedures of the NASD, let alone prejudice to a significant degree so as to result in a denial of due process. We initially note that the procedures of the NASD allow the Board of Governors, when reviewing a disciplinary action, to review the record before the District Committee, and "such other evidence as [the Board of Governors] may deem relevant.". NASD Code of Procedures for Handling Trade Practice Complaints § 16(a). Furthermore, when the decision is appealed to the Commission, "the Commission makes a *de novo* determination of the facts and the law" after a hearing "which may include the presentation of additional evidence." *Schultz*, 614 F.2d at 568. Thus, any evidence properly discovered after the initial disciplinary hearing before the District Committee could have been presented to the Board of Governors and/or the Commission. Furthermore, according to the Commission opinion affirming the decision of the Board of Governors, the NASD complaint, filed in July 1980, advised the petitioners that the evidence supporting the allegations of the complaint was available for review in the NASD office. In fact, the petitioners' hearing before the District Committee was postponed until April of 1981 to afford the petitioners more of an opportunity to re-

view the evidence in support of the complaint. The petitioners failed to complain about the lack of an opportunity to review such evidence when they appeared at the District Committee hearing, and only objected at the review hearing before the Board of Governors. Upon hearing the petitioners' objection, the chairman of the Board of Governor's hearing panel offered to stop the hearing or call a recess to allow the petitioners to review the requested evidence, but the petitioners declined the offer and dropped "[the] request for evidence." Even had the District Committee and the Board of Governors failed to provide the petitioners with access to evidence in the possession of the NASD, the petitioners have failed to delineate or specify what, if any, evidence is allegedly in the possession of the NASD, which if suppressed would have prejudiced their defense. In the absence of this evidence in the record, or any proof of the existence of any such evidence, the Commission concluded properly that the numerous discovery opportunities afforded the petitioners certainly could not be held to have violated their rights to due process of law.

## B. SANCTIONS

■ The petitioners additionally argue that the sanctions upheld by the Commission were unduly severe in light of the findings that the petitioners had not engaged in fraudulent misconduct or personal dishonestly. The petitioners' position is based on the fact that at each stage of the review, the reviewing body reversed certain factual findings of the District Committee, but after review sustained the sanctions imposed. Further, the petitioners argue that the District Committee should have considered the excellent prior records of the petitioners when it imposed sanctions.

This court may reverse Commission decisions concerning sanctions only if this court finds that the Commission has abused its discretion. *Sorrell v. Securities and Exchange Commission*, 679 F.2d 1323, 1327 (9th Cir.1982); *Sartain v. Securities and Exchange Commission*, 601 F.2d 1366, 1374 (9th Cir.1979); *Whiteside*

*and Company v. Securities and Exchange Commission*, 557 F.2d 1118, 1121 (5th Cir. 1977), *cert. denied*, 435 U.S. 942, 98 S.Ct. 1521, 55 L.Ed.2d 538 (1978). It is true that both the NASD Board of Governors and the Commission reversed certain specific factual findings of the District Committee but did affirm the sanctions imposed. Yet, the Commission considered that fact when it evaluated the appropriateness of the NASD sanctions. The Commission concluded, based on the factual findings affirmed, that Miller had "abdicated his responsibilities and permitted his firm to engage in business in wholesale disregard of applicable rules and regulations ... [a]nd [as a result] subjected public investors to serious risks." This conclusion demonstrates that the Commission weighed the gravity of the petitioners' conduct as well as their past record before deciding that the NASD sanctions were "fully justified." In light of the Commission's conclusion regarding the seriousness of the petitioners' misconduct, we refuse to say that the Commission abused its discretion in sustaining the sanctions of the NASD.

## III

The order of the Commission is AFFIRMED.