**In the MATTER OF Grant P. JONES, Respondent, A Member of the Bar of the District of Columbia Court of Appeals.**

**No. 91–559.**

District of Columbia Court of Appeals.

Submitted Dec. 17, 1991.
Decided Dec. 30, 1991.

No appearance was entered and no brief was filed for respondent.

Michael S. Frisch, Asst. Bar Counsel, with Frederick B. Abramson, Bar Counsel at the time the statement was filed, submitted a statement in support of the recommendation of the Board on Professional Responsibility.

Before FERREN and FARRELL, Associate Judges, and KERN, Senior Judge.

PER CURIAM:

This disciplinary matter is before the court on the recommendation of the Board on Professional Responsibility ("the Board") that respondent, a member of the bar of the District of Columbia, be suspended from the practice of law in this jurisdiction for a period of one year, with a requirement that respondent make a showing of fitness to practice law if and when he seeks reinstatement. Respondent is under a four-year suspension from practice in the Commonwealth of Virginia, based on findings of fact made after an evidentiary hearing by the authorities of the Virginia State Bar. We adopt the Board's recommendation explaining why a one-year, rather than four-year, suspension shall be imposed, and we incorporate by reference the Board's report, which we attach hereto as an appendix.

It is therefore

ORDERED that respondent, Grant Paul Jones, shall be suspended from the practice of law in the District of Columbia for one year, effective thirty days from the date of this order. It is

FURTHER ORDERED that if respondent seeks reinstatement in the Bar after his one-year suspension has expired, he shall file with the Board on Professional Responsibility a petition for reinstatement, and shall furnish to the Board proof of his fitness to resume the practice of law. *See* D.C. Bar R. XI, §§ 3(a)(2) and 16(d).

1. On May 28, 1991, after the Board approved the above text, we did receive an order from the Court of Appeals making a formal referral to us of the Virginia court's order in Respondent's neglect case (VSB Docket No. 89-070-0825).

## APPENDIX

## DISTRICT OF COLUMBIA COURT OF APPEALS BOARD ON PROFESSIONAL RESPONSIBILITY

Bar Docket Nos. 6–91, 10–91

## REPORT AND RECOMMENDATION OF THE BOARD ON PROFESSIONAL RESPONSIBILITY

*Introduction*

On October 17, 1990, the Virginia State Bar Disciplinary Board entered orders in two disciplinary proceedings involving Grant Paul Jones, a member of the Virginia Bar. In the first case (VSB Docket No. 89-070-0825), the Virginia Board found that Respondent had violated DR 6–101(B) by failing properly to handle a client's EEOC complaint that was filed late. The sanction imposed was an "admonition without terms," which is comparable to an informal admonition in this jurisdiction. The second case (VSB Docket No. 87-070-1177) involved a more complex set of facts and a more severe sanction. There, the Virginia Board found that Respondent violated DR 7–103(A)(1) and (2) and DR 1–102(A)(3) and (4) while representing a defendant in a criminal case. The sanction imposed for this series of violations was a four-year suspension.

The ordinary procedure in cases of this type is that when the District of Columbia Office of Bar Counsel receives certified copies of out-of-state disciplinary orders, it forwards that material to the District of Columbia Court of Appeals. The Court then enters an order that might, in appropriate cases, immediately suspend the Respondent in this jurisdiction and refer the matter to us for a recommendation as to whether reciprocal discipline should be imposed. Although the Court entered no referral order in this case, we are considering the matter to be before us for action.[1]

Under the provisions of Section 11 of Rule XI, we are required to recommend the

However, we received no referral as to the Virginia order in the proceedings that led to Respondent's suspension in Virginia and Respondent is not under any suspension in the District of Columbia at this time.

imposition of reciprocal discipline unless a showing is made, by clear and convincing evidence, that one of the factors listed in Section 11 precludes that result. Paraphrasing the Rule, to avoid reciprocal discipline, the attorney must show that the foreign proceedings were procedurally defective, that there was an insufficiency of proof, that imposition of the same discipline here would result in grave injustice, that the misconduct found out-of-state would warrant substantially different discipline here, or that the misconduct out-of-state does not constitute misconduct here.

Bar Counsel has filed a submission urging the imposition of reciprocal discipline, asserting that none of the preclusive Section 11 factors is present. We received from Respondent a copy of a document entitled "Answer to Notice to Show Cause," the original of which was apparently filed in the United States Supreme Court in connection with disciplinary proceedings there. The gist of this rambling narrative—which essentially admits the main facts on which the Virginia suspension was ordered—is that the proceedings against Respondent were the result of a plot by certain Virginia government agencies to harass Respondent.

The Board recommends imposition of reciprocal discipline, except that the suspension should be for only a one year period—with a showing of fitness required for reinstatement. In reaching this result, we primarily considered the Virginia proceeding that led to Respondent's suspension, although we have taken the EEOC neglect case into account.

### Statement of Facts

The facts in the case that led to Respondent's suspension are as follows:

1. Respondent belonged to a church that apparently had a program under which parishioners acted as "counselors" for other church members in need of guidance. One family group that Respondent counseled consisted of a woman (who was the complaining witness), her ex-husband and their daughter. The object of the counseling was to attempt to effect a reconciliation between the woman and her ex-husband.

2. While Respondent was counselor of this group, the daughter accused her father of incest. A criminal proceeding was instituted and Respondent agreed to served as the father's defense counsel. A guardian *ad litem*, who was an attorney, was appointed to protect the interests of the daughter. She was not only the complaining witness in the criminal proceeding against her father, but she also was a party in a related civil proceeding in which a protective order was sought to preclude further contact with the father.

3. In working out a defense strategy for the father on the incest charges, Respondent apparently decided to capitalize on what he understood to be a pattern of promiscuity by the ex-wife and the client's daughter. Toward this end, according to the Virginia authorities, on February 10, 1987, Respondent paid an unannounced visit to the woman and daughter and, apparently without disclosing that he represented the father in the criminal proceedings, he held a "counseling" session with them. The Virginia Bar Report states that, during the session, Respondent "prevailed upon the Complainant and her daughter to discuss their sexual activities and, in the process, to expose their breasts to him." Va. Bar Rept., p. 2. He recorded their conversation with a hidden tape recorder. Using this tape recording, Respondent then prepared an affidavit for the woman and daughter to sign in which they recanted the incest allegations against his client.

4. At the time Respondent presented this affidavit to her, the daughter was represented by the guardian *ad litem*. Nevertheless, Respondent conducted his meeting with her "in the absence of, and without notification to, the guardian *ad litem*." Va.Bar Rept., p. 3.

5. The mother and daughter agreed to sign Respondent's affidavit, recanting their earlier allegations against Respondent's client. However, approximately one month later, they signed another affidavit, this time for the prosecution, recanting the recantation. Indeed, criminal charges were

then filed against Respondent himself. Undaunted, Respondent then met again with the mother and daughter, at which time he advised the mother as to how she should respond to inquiries that might be directed at her concerning the February 10, 1987 "counseling" session.

### The Virginia Decision

Based on these facts, the Virginia Board found violations of its Disciplinary Rules in that the Respondent had communicated directly with a person (the daughter) when she was known to be represented by counsel. This was held to be a violation of DR 7–103(A)(1). With respect to his dealings with the mother, the Board found that Respondent violated DR 7–103(A)(2) by rendering legal advice to an "unrepresented person" without advising that person (or being sensitive to the fact) that she had conflicting interests with Respondent's client (the ex-husband), if not with Respondent himself.

The Virginia Board found it "particularly reprehensible" that Respondent had engaged in "deceitful action" by engaging both women in conversations concerning "matters which were extremely private and sensitive to them under the guise of acting as their church counselor when, in fact, the sole purpose of that meeting was to benefit his then undisclosed client." Va.Bar Rept., p. 4. This was held to be a further violation of DR 7–103(A)(2), as well as a violation of DR 7–103(B), DR 1–102(A)(3), and 1–102(A)(4).[2]

### Discussion

As we have stated, under Rule XI, where an attorney who is a member of the Bar of the District of Columbia is disciplined in another jurisdiction, the District of Columbia will impose the same discipline unless the attorney proves that one of the factors enumerated in the Rule is present. From a procedural point of view, we see no infirmity in the Virginia proceedings: Respondent received notice of the charges against him and apparently chose not to participate.

There was an evidentiary hearing, nevertheless, and findings of fact were made by the Virginia Bar authorities on the basis of "clear and convincing evidence." Although Respondent has filed with us a copy of a rambling discourse that questions the motivation of certain government officials who pursued the charges against him, he does not seriously challenge the procedural fairness of the Virginia proceedings.

The only questions before us, then, are whether the misconduct adjudicated in Virginia would be considered misconduct in the District of Columbia and, if so, whether the sanction imposed in Virginia is within the range of sanctions that the District of Columbia authorities would impose for comparable misconduct here.

### Sanctions

Although there is no one opinion among our precedents that involves precisely the fact pattern in this case, it is clear that the separate components of Respondent's adjudicated misconduct would each be found to be misconduct in the District of Columbia. In at least two cases, we imposed discipline on attorneys who violated DR 7–104(A)(1) by communicating directly with adverse parties known to be represented by counsel. See *In re Lamb*, D.N. 81–88 (BPR 7/28/89), and *In re Thompson*, 492 A.2d 866 (D.C.1985). The sanction in *Thompson* was a 90–day suspension for three unauthorized communications with an adverse government witness in a criminal case, all of which were efforts to intimidate the witness. Respecting Respondent's rendering of legal advice to the wife in the "conflict of interest" situation, we sanctioned a lawyer in *In re Stow*, Appeal No. 88–1449 (D.C.App.1989) for undertaking to represent a pair of clients who had conflicting interests in a single criminal proceeding in which they were both charged.

Insofar as Respondent's discipline in Virginia is based on deceit and misrepresentation respecting the church counseling episode, we view several of our cases to involve comparable actions: *In re Reback,*

---

**2.** Other charges against Respondent, alleging violations of DR 5–101(A) and 7–102(A)(3), were

dismissed for lack of clear and convincing evidence.

513 A.2d 226 (D.C.1986) (*en banc*); *In re Greenspan*, 578 A.2d 1156 (D.C.1990); *In re McGough*, D.N. 275–87 (BPR 8/3/90); *In re Sandground*, 542 A.2d 1242 (D.C.1988); *In re Rosen*, [570 A.2d 728] [1989]; *In re Herndon*, [596 A.2d 592] [1989].

These cases indicate the range of sanctions that the District would impose for the type of misconduct that Respondent engaged in. Thus, in *McGough*, we recommended that the attorney be suspended for six months and be required to prove fitness upon readmission for a pattern of misconduct that included misleading statements to several different federal judges over a substantial period of time; in *Sandground*, the Court imposed a three-month suspension on a lawyer who helped a client conceal assets in connection with discovery responses in a divorce action; in *Rosen*, the attorney was suspended for nine months and required to prove fitness upon readmission for making false statements in an application for admission to the Maryland Bar.

Our report in the recent *Herndon* case is most instructive. At the time that matter came before us, another disciplinary case involving the same Respondent was pending before the Court. The earlier case involved a finding of intentional misappropriation and, because the two cases had to be considered together, the Board had to recommend in the second case that the Respondent be disbarred. Our report, however, discussed the range of sanctions if the second case alone had been before us:

> The range of sanctions for a single act of dishonesty is from public censure to suspension for one year. We have reviewed these cases and conclude that, if this violation [misconduct concerning pledged stock certificates] were standing alone, a suspension for one year with a required showing of fitness for reinstatement would be appropriate and consistent with the sanctions approved in prior cases. See *In Re Hutchinson, supra* (one-year suspension); *In Re McGough*, No. 275–87 (BPR Aug. 3, 1990) (6–month suspension and proof of fitness for reinstatement); *In Re Greenspan*, 578 A.2d 1156 (D.C.1990) (6–month suspension and proof of fitness for reinstatement). [footnote omitted.]

We believe the quoted language is equally applicable in the instant case and makes it clear that if we recommended imposition of a suspension equal to that imposed by Virginia, this would not be within the range of our established sanctions for such violations.[3]

Thus, because the four-year suspension would be excessive here, we recommend that the Court discipline Respondent on a reciprocal basis, but that he be suspended for only a one year period and required to show fitness in the event he seeks to practice again in the District of Columbia. See, *In re Reid*, 540 A.2d 754 (D.C.1988).

Dated this 31st day of May, 1991.

BOARD ON PROFESSIONAL RESPONSIBILITY

By: /s/Charles R. Donnenfeld
Charles R. Donnenfeld
Vice Chairman

All members of the Board join in this Report, except Members FREUND and WILLIAMS, who did not participate.

---

**3.** In this jurisdiction the cases in which lawyers have been suspended for longer periods involve a more serious *pattern* of misconduct. See, *e.g., In re Washington*, 541 A.2d 1276 (D.C.1988); *In re Haupt*, 422 A.2d 768 (D.C.1980). Even in cases where a two-year suspension was imposed in this jurisdiction, there is usually a prior disciplinary history and a pattern of misconduct involving more than one serious case. See, *e.g., In re Thorup*, 461 A.2d 1018 (D.C.1983); *In re Alexander*, 496 A.2d 244 (D.C.1985). Although Respondent in our case had an additional neglect violation that was adjudicated the same day as his more serious violation, we do not believe that this additional violation warrants increasing the suspension beyond one year.