65 F.3d 168
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Ron MORROW, Petitioner,
v.
DEPARTMENT OF AGRICULTURE, Respondent.
 No. 94-3793.
 United States Court of Appeals, Sixth Circuit.
 Sept. 5, 1995.
 
 Before: JONES and BOGGS, Circuit Judges; and CHURCHILL, District Judge.*
 PER CURIAM.
 
 
 1
 Petitioner Ron Morrow seeks review of a default judgment, and accompanying penalties, entered against him by an Administrative Law Judge, and affirmed by the Judicial Officer, of the United States Department of Agriculture. The Department entered the default when Morrow failed to file a timely answer to a complaint that he had possessed and trafficked in exotic animals without the appropriate licenses. For the reasons set out more fully below, the petition is denied.
 
 
 2
 * Under the Animal Welfare Act ("AWA"), 7 U.S.C. Secs. 2131-2159, any person keeping, selling, or exhibiting certain kinds of animals, classified as "exotic" animals, must be licensed as a "dealer." Such persons are also subject to regulations and standards designed to insure that licensees properly care for the animals and that they properly record all transactions.
 
 
 3
 Between May 4, 1991 and August 7, 1993, Morrow sold at least seven "exotic" animals for resale, for use as pets, or for exhibition. During this time, he also bought at least ten animals for use as pets or for exhibition.[1] Morrow did not have an AWA-required "dealer license."
 
 
 4
 On August 14, 1993, inspectors visited Morrow's facility. They recorded at least twenty violations of regulations and standards in the care of the animals. Among the many violations the inspectors found were: lack of proper veterinary care for the animals; structurally unsound facilities; no suitable perimeter to contain the animals; dirty food and water receptacles; failure to clean out animals pens; and improper storage of food and bedding.
 
 
 5
 On September 2, 1993, inspectors sought to revisit Morrow's facilities, but he refused to grant them permission. However, on September 13, 1993, Morrow permitted another inspection. The inspectors discovered that Morrow failed to correct the August 14 violations. Finally, on September 29, 1993, another inspection of Morrow's facilities found that the violations remained uncorrected.
 
 
 6
 On January 13, 1994, the Acting Administrator of the Animal and Plant Health Inspection Service (the "Agency"), a unit of the United States Department of Agriculture, issued an administrative adjudicatory complaint against Ron Morrow. The complaint charged Morrow with violations of the AWA, 7 U.S.C. Secs. 2131-2159, and its accompanying regulations and standards. See 9 C.F.R. pts. 1-3.
 
 
 7
 On February 10, 1994, Morrow moved for an extension of time to file an answer to the complaint. The Administrative Law Judge ("ALJ") granted the motion, giving Morrow until March 22, 1994 to file an answer.
 
 
 8
 On March 21, 1994, Morrow mailed his answer to the Hearing Clerk. However, under Agency rules of procedure for administrative hearings, a document is "filed" when it reaches the Hearing Clerk, not when mailed. 7 C.F.R. Sec. 1.147(g). The Hearing Clerk did not receive Morrow's answer by March 22.
 
 
 9
 On March 24, 1994, the Agency moved to have the ALJ adopt a proposed decision and order based on admission of facts due to default. On March 25, 1994, the Hearing Clerk received Morrow's answer. The Clerk informed Morrow of the Agency's motion for default and Morrow filed a response opposing the motion on April 25, 1994.
 
 
 10
 On May 4, 1994, the ALJ granted the Agency's motion and issued a "Decision and Order upon Admission of Facts by Reason of Default." He adopted the facts alleged in the complaint and deemed them to be "admitted" by Morrow. The ALJ then imposed sanctions on Morrow.
 
 
 11
 Morrow appealed the ALJ's decision to the Judicial Officer ("JO"). The JO affirmed and adopted the ALJ's decision on June 29, 1994. The JO issued additional conclusions as to Morrow's violations, assessed, pursuant to 7 U.S.C. Sec. 2149, a civil penalty of $50,000 against Morrow, and disqualified Morrow from becoming licensed under the AWA for ten years.
 
 
 12
 Morrow filed this timely petition. This court has jurisdiction over petitions for review of a final order of the Secretary issued under the Animal Welfare Act, pursuant to 7 U.S.C. Sec. 2149(c) and 28 U.S.C. Sec. 2342.
 
 II
 
 13
 Morrow appears to offer three arguments for vacating the default judgment. Morrow claims that the Agency did not follow its own rules in entering the default; that the Federal Rules of Civil Procedure should apply in this action; and, that the Agency rules of practice violate his constitutional right to due process. None of Morrow's arguments merit reversal.
 
 
 14
 Morrow's first contention appears to be based, at least partially, on alleged violations of Agency rules in seeking and imposing the default judgment. In particular, Morrow argues that the imposition of a default judgment was "a total abuse of discretion" and violated, among other things, 7 U.S.C. Sec. 2149(b). This argument is meritless.
 
 
 15
 One of Morrow's specific concerns is that the decision did not meet Section 2149(b)'s command that the "Secretary shall give due consideration to the appropriateness of the penalty with respect to the size of the business of the person involved, the gravity of the violation, the person's good faith, and the history of previous violations." 7 U.S.C. Sec. 2149(b). To the contrary, the decision lays out in detail the factual circumstances underlying the decision to impose a fine and a ban on future licensing. Furthermore, until his brief in this court, Morrow has never contested the size of the penalty or the length of the ban. The Agency's motion for default clearly laid out the proposed penalty, and Morrow had twenty days in which to respond. In his response, Morrow contested, in general terms, the appropriateness of the default, but never disputed the scope of the proposed penalty.
 
 
 16
 Nor did the Agency violate its rules in securing the default judgment. The Agency's rules of practice provide, at 7 C.F.R. Sec. 1.147(g):
 
 
 17
 Effective date of filing. Any document or paper required or authorized under the rules in this part to be filed shall be deemed to be filed at the time when it reached the hearing clerk; or, if authorized to be filed with another officer or employee of the department it shall be deemed to be filed at the time when it reaches such officer or employee.
 
 
 18
 Morrow concedes that his answer arrived three days late. 7 C.F.R. Secs. 1.136(c) and 1.139 clearly describe the consequences of failing to answer a complaint in a timely fashion. These sections provide for default judgments to be entered. They specifically provide for admissions absent an answer. See 7 C.F.R. Sec. 1.136(c) ("Failure to file an answer within the time provided ... shall be deemed ... an admission of the allegations in the complaint...."). Furthermore, the failure to answer constitutes a waiver of the right to a hearing. 7 C.F.R. Sec. 1.139.
 
 
 19
 Morrow also claims that the Federal Rules of Civil Procedure should govern the Department of Agriculture's administrative proceeding. Rule 1 of the Federal Rules of Civil Procedure clearly states that "These rules govern the procedure in the United States district courts in all suits of a civil nature whether cognizable as cases at law or in equity or in admiralty, with the exceptions stated in Rule 81." Fed.R.Civ.P. 1. (emphasis added). As such, "[n]either the Federal Rules of Civil Procedure nor the Federal Rules of Criminal Procedure apply to administrative hearings." Mister Discount Stockbrokers, Inc. v. S.E.C., 768 F.2d 875, 878 (7th Cir.1985).
 
 
 20
 Finally, Morrow also argues that the Agency rules of practice violate his constitutional right to due process. The fundamental elements of due process are notice and opportunity to be heard. See Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313 (1950). Congress incorporated these principles into the Administrative Procedure Act, 5 U.S.C. Sec. 544(b). See Yellow Freight Sys., Inc. v. Martin, 954 F.2d 353, 357 (6th Cir.1992). The statutory sections cited by Morrow also demonstrate a concern for notice and opportunity. See 7 U.S.C. Sec. 2149 ("No penalty shall be assessed or cease and desist order issued unless such person is given notice and opportunity for a hearing with respect to the alleged violation.").
 
 
 21
 This Circuit has rejected at least one challenge, admittedly in dicta, to the agency procedures at issue here. In Fleming v. United States Dep't of Agriculture, 713 F.2d 179 (6th Cir.1983), the court held that a Horse Protection Act adjudicatory proceeding, utilizing the Agency's rules, passed basic constitutional muster. The court noted that Fleming failed to challenge the adequacy of the rules of practice and procedural safeguards afforded those brought before the Agency, "[n]or would such a challenge succeed." Fleming, 713 F.2d at 183 n. 8.
 
 
 22
 The Agency gave Morrow ample notice and opportunity to respond. In fact, he requested and received an extension of his answering date. Boiled to its essence, what Morrow would like this court to do is to hold that the Due Process Clause of the Constitution requires that the date of filing be the date a party deposits a pleading in the mail. There is no precedent for such action.
 
 
 23
 We recognize that courts traditionally disfavor default judgments and reverse them when offered a colorable reason. See Oberstar v. FDIC, 987 F.2d 494 (8th Cir.1993) ("Given the unfair harassment inherent in the FDIC commencing this second proceeding while judicial review of the Prohibition order was pending" it was an abuse of discretion to enter a default judgment). Nonetheless, in this case the rule is clear and unequivocal and the only explanation offered by Morrow is ignorance. Further, in each of the three filings made with the Department of Agriculture, Morrow never offered more than vague and conclusory, and sometimes simply wrong, statements of fact and law.
 
 
 24
 Morrow's answer to the complaint is a single page of about 100 words. It makes conclusory statements of denial, it denies jurisdiction, asserts laches and estoppel without supporting facts and claims double jeopardy. In the "Response to Motion for Default Judgment" Morrow uses just three paragraphs to provide the reasons for opposing the default. The first paragraph states that under the Federal Rules of Civil Procedure service is complete upon mailing; the second, that under those same rules, default could not be entered without a hearing. These claims are simply irrelevant. Finally, in his third and last paragraph, Morrow claims that "Gentleman do not comport themselves in such a fashion...." Morrow never provides any grounds for concluding that the ALJ abused his discretion in imposing a default. Similarly, in his appeal to the JO, Morrow continues to press his feeble claim that the Federal Rules of Civil Procedure apply to an administrative action. Again, he never attacked the substance of the charges or the proposed penalty. He has therefore made it impossible to conclude that the JO abused his discretion in affirming the default and imposing penalties.
 
 
 25
 The Supreme Court has repeatedly warned "reviewing courts against engrafting their own notions of proper procedures upon agencies entrusted with substantive functions by Congress." Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc., 435 U.S. 519, 525 (1978). The Agency afforded Morrow all of the rights that its rules required and followed the procedures outlined in those rules to secure the default judgment.
 
 III
 
 26
 The petition for review of an order of the Secretary of the United States Department of Agriculture is DENIED.
 
 
 
 *
 The Honorable James P. Churchill, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Neither party, nor any of the material in the record, indicates what kinds of animals they were. However, 9 C.F.R. Sec. 1.1 defines an exotic animal as "any animal not identified in the definition of 'animal' provided in this part that is native to a foreign country or of foreign origin or character, is not native to the United States, or was introduced from abroad. This term specifically includes animals such as, but not limited to, lions, tigers, leopards, elephants, camels, antelope, anteaters, kangaroos, and water buffalo, and species of foreign domestic cattle, such as Ankole, Gayal, and Yak."