IN THE MATTER OF RICHARD C. ANDERSON.

Suffolk. November 1, 1993. - December 10, 1993.

Present: WILKINS, NOLAN, LYNCH, & GREANEY, JJ.

*Attorney at Law*, Disciplinary proceeding, Public censure.

The Board of Bar Overseers properly considered an attorney's disciplinary
     history in determining its recommended disposition in a new proceed-
     ing; the board was not bound by the conclusions and recommendations
     of its hearing committee. [524-525]
Public censure and restitution to the client was the appropriate sanction
     for an attorney's violations of S.J.C. Rule 3:07, Canon 2, DR 2-110 (A)
     (2); Canon 6, DR 6-101 (A); and Canon 7, DR 7-101 (A), in his neg-
     lect of a client matter, where that sanction was not markedly disparate
     from those imposed in similar cases and where there were no mitigating
     factors present. [525-527]


INFORMATION filed in the Supreme Judicial Court for the
county of Suffolk on December 9, 1992.

The case was reported by *Abrams*, J.

*Charles B. Swartwood, III*, for the respondent.

*Susan Strauss Weisberg*, Assistant Bar Counsel.

NOLAN, J. The Board of Bar Overseers (board) filed an
information and record in the Supreme Judicial Court for
the county of Suffolk recommending that Richard C. Ander-
son (respondent) be publicly censured. A single justice re-
served decision and reported the matter to the full court. We
agree with the recommendation of the board and order a
public censure. The uncontroverted facts follow.

In March, 1988, the respondent agreed to undertake repre-
sentation of Patricia MacNown for matters relating to an au-
tomobile accident that occurred in February, 1988.
MacNown was the owner and operator of one of the vehicles
involved in the accident. She was not injured in the collision,

but her vehicle was severely damaged. MacNown's father, a former client of the respondent, communicated with the respondent shortly after the accident.

MacNown's primary concern was that she not be found at fault for the accident. She sought full reimbursement of the costs associated with renting an automobile while hers was being repaired. Her motor vehicle insurance policy did not provide substitute transportation coverage. Travelers Insurance Company (Travelers), the insurance carrier of the other vehicle involved in MacNown's accident, offered to reimburse only 50% of the rental costs. MacNown mistakenly believed that accepting anything less than full reimbursement would constitute a concession of fault, damaging her driving record.

The respondent obtained various documents from MacNown's insurance carrier in March or April, 1988. Thereafter, he took no action on her case for two and one-half years. During that period, the client, through her father, made numerous attempts to induce the respondent to act. From January through October, 1989, the father made frequent telephone calls to the respondent and left messages with his office, but the respondent failed to reply. Finally, in November, 1989, the respondent telephoned the father and apologized for the neglect. Thereafter, the father sent the respondent two letters requesting a report on the status of the case and copies of documents which he thought had been filed with the court on his daughter's behalf. Nothing, however, had been filed. The respondent failed to inform the father of this or otherwise respond to his inquiries. The father again tried in vain to contact the respondent through October, 1990.

The father sent a letter to the respondent in October, 1990, advising him that, if his inattention continued, he would report such conduct to the board. The respondent thereafter telephoned the father again admitting his neglect, and promised to pursue the case. The respondent then communicated with Travelers and secured an offer of 70% reimbursement for MacNown's rental expenses. In a letter to the

respondent, the father rejected the offer, again stating the position that MacNown would accept nothing less than 100% reimbursement.

Between November, 1990, and January, 1991, the respondent met with MacNown very briefly on one occasion concerning her case, and he sent for and received a complete police report of the accident. On February 12, 1991, just three days prior to the expiration of the applicable period of limitation, the respondent filed in the Barnstable Division of the District Court Department a complaint and statement of damages against the operator of the vehicle that collided with MacNown seeking recovery for her rental expenses in the amount of $1,930.02. The complaint failed to name as a party defendant the owner of the other vehicle, and it was filed in an improper venue. The respondent never caused the complaint to be served on the named defendant.

The father wrote to the respondent claiming that the period of limitation had expired on the action, and demanded payment to MacNown of $3,600. The respondent replied by explaining that he had timely filed a complaint which protected her rights. He sent a copy of the complaint to the father after a subsequent request.

The respondent thereafter abandoned MacNown's case. He ceased all representation without notifying her and without withdrawing his name as attorney of record. He failed to inform the MacNowns that the complaint had not been served. He never offered to return the case file, and he failed to advise MacNown to seek other counsel. She later decided not to engage other counsel or otherwise further pursue her claim when she learned that Travelers' determination of fault or liability would not affect her driving record.

The respondent's conduct was reported to the board. A hearing committee of the board (hearing committee) commenced proceedings. After a full hearing, the hearing committee recommended a private reprimand. Bar counsel appealed from the recommended disposition, arguing that the respondent's conduct, in light of his disciplinary history

which included three prior instances of private discipline,[1] warranted public censure. The board considered the matter and unanimously recommended that the respondent receive a public censure and that he be ordered to pay $1,351 in restitution to MacNown, which amount represents Travelers' offer of reimbursement. In reaching its result, the board found that the hearing committee failed to consider sufficiently the respondent's history in determining its recommended disposition. The respondent disagrees.

The respondent argues that there is no basis for the board's increased sanction because the hearing committee plainly considered his history of bar discipline in determining that a private reprimand was warranted.[2] He contends that the hearing committee's recommended sanction should prevail.

The respondent's argument is unfounded. The board is not bound by the conclusions and recommendations of the hearing committee; it is free to evaluate the facts of each case and recommend a different sanction. See S.J.C. Rule 4:01, § 8, as amended, 411 Mass. 1315 (1991).[3] See, e.g., *Matter of Palmer*, 413 Mass. 33, 37 (1992) (board "rejected the hearing committee's recommendation that [the respondent] receive a private reprimand, and instead recommended that [the respondent] be publicly censured"); *Matter of Bryan*, 411 Mass. 288, 291 (1991) ("A majority of the board rejected . . . the hearing committee's recommendation of sus-

---

[1] The board found the respondent's history of bar discipline to include: "(1) an informal admonition in 1976 for neglect of an estate; (2) a private reprimand in 1979 for neglect of an estate beginning in 1972 and continuing until 1984, five years after the reprimand had been administered; and (3) an informal admonition on July 30, 1987, for neglect of a contract claim between 1985 and 1987."

[2] In its findings of fact and recommendation for discipline, the hearing committee listed the respondent's three prior instances of bar discipline in a section entitled "Mitigating or Aggravating Factors."

[3] Supreme Judical Court Rule 4:01, § 8 (3), as amended, 411 Mass. 1315 (1991), provides in part: "The Board may adopt the findings of fact submitted by the hearing committee or the panel or revise such findings which it determines to be erroneous . . . ."

pension. The board and bar counsel recommend disbarment"). It did just that here. In its wisdom, the board concluded that a private reprimand was insufficient. The respondent's history of improper conduct particularly impressed the board. This is entirely appropriate. "[E]vidence of past misconduct, particularly where that misconduct has been persistent, has been essential in determining the appropriate level of discipline to be imposed in any case." *Matter of Saab*, 406 Mass. 315, 327 (1989).

Having concluded that the actions of the board were appropriate, we must determine whether to adopt its recommended sanction of public censure. Although we are empowered to review the board's findings and reach our own conclusion, the board's conclusions and recommendation are entitled to deference. See *Matter of Alter*, 389 Mass. 153, 157-158 (1983). We agree with the board that public censure is the appropriate sanction in this case.

The respondent neglected his client's case, ignored his client's father's repeated letters and calls requesting action, failed to educate himself and inform his client of the law, filed a deficient complaint in an improper venue, failed to serve the complaint on the named defendant, and withdrew representation without providing notice to his client or otherwise taking steps to protect the client's interests. This conduct violated S.J.C. Rule 3:07, Canon 2, DR 2-110 (A) (2), as appearing in 382 Mass. 774 (1981),[4] S.J.C. Rule 3:07, Canon 6, DR 6-101 (A), as appearing in 382 Mass. 783 (1981),[5] and S.J.C. Rule 3:07, Canon 7, DR 7-101 (A), as

---

[4]Supreme Judicial Court Rule 3:07, Canon 2, DR 2-110 (A) (2), as appearing in 382 Mass. 774 (1981), provides: "In any event, a lawyer shall not withdraw from employment until he has taken reasonable steps to avoid foreseeable prejudice to the rights of his client, including giving due notice to his client, allowing time for employment of other counsel, delivering to the client all papers and property to which the client is entitled, and complying with applicable laws and rules."

[5]Supreme Judicial Court Rule 3:07, Canon 6, DR 6-101 (A), as appearing in 382 Mass. 783 (1981), DR 6-101 (A) provides: "A lawyer shall not: (1) Handle a legal matter which he knows or should know he is not competent to handle, without associating with him a lawyer who is competent

appearing in 382 Mass. 784 (1981).[6] The respondent suggests that a private reprimand is sufficient. He has been both privately admonished and reprimanded in the past, however, and each sanction imposed has proved futile. He has shown a continued pattern of unethical or otherwise improper conduct. The board found that "at no time during the last 20 years did more than a single year go by in which the respondent was not neglecting a client and violating the disciplinary rules." Public censure is warranted.

A sanction is appropriate only if it is not markedly disparate from those imposed in similar cases. See *Matter of Alter, supra* at 156. Public censure is not improper in these circumstances. In *Matter of Gustas*, S.J.C. No. 91-19BD (Mar. 19, 1992), a single justice of this court entered an order for public censure where the respondent had filed defective articles of incorporation for his client and ignored the client's repeated requests for assistance, and the respondent had a history of one private reprimand. The fact that the respondent in *Matter of Gustas* also failed to cooperate fully with the board's investigation does not render the case an unsuitable comparison, as Anderson has also violated other disciplinary rules. Similarly, in *Matter of Keefe*, 7 Mass. Att'y Discipline Rep. 138, 139 (1991), a single justice determined that public censure was appropriate where the respondent had neglected his client's case, failed to respond to the client's attempts to contact him, and failed to commence action prior to the passing of the period of limitation. In *Matter of Keefe, supra*, the respondent also misrepresented his efforts to both the client and bar counsel. Again, this fact does not preclude comparison, because the respondent in

---

to handle it. (2) Handle a legal matter without preparation adequate in the circumstances. (3) Neglect a legal matter entrusted to him."

[6]Supreme Judicial Court Rule 3:07, Canon 7, DR 7-101 (A), as appearing in 382 Mass. 784 (1981), provides: "A lawyer shall not intentionally: (1) Fail to seek the lawful objectives of his client through reasonably available means permitted by law and the Disciplinary Rules . . . . (2) Fail to carry out a contract of employment entered into with a client for professional services . . . . (3) Prejudice or damage his client during the course of the professional relationship . . . ."

*Matter of Keefe* had no history of bar discipline, and Anderson has also violated additional disciplinary rules.

The respondent finally argues that the circumstances of his conduct present mitigating factors which warrant a lesser sanction. He contends that his reputation in the community in which he practices should be considered for purposes of mitigation. We disagree. Only extraordinary mitigating circumstances should affect a sanction otherwise warranted by an attorney's conduct. We have long recognized that an "otherwise excellent reputation in the community" is nothing more than a "typical" mitigating factor that warrants no change in disposition. *Matter of Alter, supra* at 157. Attorneys should try to maintain good reputations. "[W]e are not so pessimistic about the ethics of lawyers as to conclude that a lawyer who conforms to the expected standard of conduct in some respects thereby has established mitigating circumstances." *Matter of Dawkins*, 412 Mass. 90, 96 (1992).

A judgment ordering a public censure shall be entered in the Supreme Judicial Court for the county of Suffolk. The respondent shall be ordered to pay $1,351 in restitution to MacNown. The record in this case is to be released from impoundment.

*So ordered.*