IN THE MATTER OF ROBERT H. TOBIN, SR.

Suffolk. November 4, 1993. - February 16, 1994.

Present: LIACOS, C.J., NOLAN, LYNCH, & GREANEY, JJ.

*Attorney at Law*, Disciplinary proceeding, Suspension, Canons of ethics.

The conclusion of a hearing committee of the Board of Bar Overseers, that an attorney intentionally induced a widow to retain him for full probate of her husband's estate, which was unnecessary, so that the attorney could realize unwarranted and excessive legal fees for himself and his firm, in violation of certain canons of ethics and disciplinary rules, was supported by substantial evidence. [85-86]

In a bar disciplinary proceeding, the hearing committee's finding that the respondent attorney made false and fraudulent representations to the Probate Court, to the complainant and her family, and to bar counsel provided a basis for a single justice to conclude that the respondent violated S.J.C. Rule 3:07, Canon 1, DR 1-102 (A) (4), (5), and (6). [87]

An attorney who was the subject of disciplinary proceedings, and who did not seek discovery orders under the applicable rules of the Board of Bar Overseers, could not raise a claim on appeal that he was denied due process of law because he did not have the same rights of discovery as bar counsel. [87-88]

The decision of a single justice in an attorney disciplinary proceeding that the attorney had violated the canons of ethics for the practice of law was supported by sufficient evidence, free from errors of law or abuse of discretion, based on the record filed by the Board of Bar Overseers. [88]

The appropriate sanction to be imposed, in the circumstances of a bar discipline matter in which the attorney intentionally induced a widow to retain him for full and unnecessary probate of her husband's estate so that the attorney could realize unwarranted and excessive legal fees for himself and his firm, was an eighteen-month suspension from the practice of law. [88-91]

INFORMATION filed in the Supreme Judicial Court for the county of Suffolk on November 10, 1992.

The case was heard by *O'Connor*, J.

The respondent, pro se.

*Susan Strauss Weisberg*, Assistant Bar Counsel.

LYNCH, J. This bar discipline appeal arises from an order of a single justice of this court, acting on an information filed by the Board of Bar Overseers (board), suspending Robert H. Tobin, Sr. (respondent), from the practice of law for three years.

On April 2, 1990, bar counsel filed a petition for discipline against the respondent.[1] On February 5, 1991, a hearing committee (committee) of the board conducted an evidentiary hearing and subsequently recommended that the respondent be suspended from the practice of law for a period of not less than sixty days.

The respondent and bar counsel both appealed and an appeal panel adopted the committee's findings of fact and conclusions of law but concluded that the committee's recommended discipline was inadequate for the seriousness of the respondent's conduct. The panel consequently recommended a three-year suspension from the practice of law and that the respondent be required to take and pass the Multi-State Professional Responsibility Examination as a condition of reinstatement. The board voted to adopt the panel's recommendation on September 14, 1992, with two members voting for a two-year suspension.

The board filed an information with this court on November 10, 1992, and a single justice subsequently ordered that the respondent be suspended from the practice of law in the Commonwealth for a period of three years.

*Facts as found by the hearing committee.* The respondent was admitted to practice law in Massachusetts on March 31, 1951. During the period in question he practiced with his brother, Albert G. Tobin, at their firm (Tobin and Tobin) in the Roslindale section of Boston.

---

[1] The petition also named Albert G. Tobin, the respondent's brother. See *Matter of Tobin, post* 92 (1994).

In 1983, Albert Tobin prepared wills for Walter Arnold and his wife, Mary Arnold (complainant). Walter Arnold died on August 12, 1986. All of his property, except the family automobile, was held in joint tenancy with right of survivorship in his wife. The automobile, though registered in Arnold's name, was driven by both Arnolds as a pleasure vehicle and, pursuant to G. L. c. 90D, § 15A (1992 ed.), was effectively held jointly with right of survivorship. Arnold left no debts or claims on the estate.

On or about August 19, 1986, the complainant, accompanied by John Mulloy, her son from a previous marriage, met with the respondent to discuss the disposition of her husband's estate. The respondent knew that all of Walter Arnold's assets were held jointly with right of survivorship and that such joint assets did not become part of the probate estate and were not subject to administration in the Massachusetts Probate and Family Court Department. The respondent also knew his work on the Arnold estate could be limited to filing the will, preparing an estate tax return, and discharging the Massachusetts estate tax lien on the Arnolds' house.

Nevertheless, the respondent intentionally advised the complainant inaccurately and incompletely respecting her options and raised exaggerated and baseless concerns for the purpose of inducing the complainant to retain him for full probate of her husband's estate so that he could realize unwarranted and excessive legal fees for himself and his firm. The respondent's testimony and proffered explanations for his actions were frequently inconsistent and implausible, and his conduct following the meeting was improper and done for the purpose of concealing the fact that there was no necessity to probate Walter Arnold's estate. His actions included:

1. In his petition for allowance of the will, the respondent misrepresented that Walter Arnold died possessed of solely-owned real estate.

2. He filed an affidavit misrepresenting that all of Walter Arnold's heirs at law were devisees or legatees under his will, although he knew that the complainant was the sole actual legatee under the will.

3. He prepared and filed an inventory in Probate Court which misrepresented that Walter Arnold's bank accounts were solely-owned although he knew that the accounts were jointly held and that jointly-held assets were not to be listed as part of the probate estate.

4. He prepared and filed an affidavit of error as to inventory in which he misrepresented that Walter Arnold solely owned the marital house, even though he knew that the property had been held by the Arnolds as tenants by the entirety.

5. He had the complainant sign a "release of all demands" in which he misrepresented that he had paid over all the estate assets, even though he had never held any such assets and he knew that the complainant had held legal ownership and control of the assets since her husband's death.

The respondent then sent the complainant a bill for $4,140 for his firm's services and $180 for disbursements. Although he had agreed to charge at a rate of between $75 and $125 an hour, the fee was actually based on a Massachusetts Bar Association minimum fee schedule (MBA schedule) that had been withdrawn[2] and not on time spent or the agreed upon hourly rate. The respondent kept no contemporaneous time records.

The committee ultimately concluded that the respondent:

"(1) induced [the complainant] to retain him with the intent of thereby collecting unwarranted fees; probated the Estate of [the complainant's] husband under false pretenses; intentionally performed and billed for unnecessary and improper legal services; and made false and fraudulent representations to the Probate Court, to [the complainant] and her family, and to the Bar Counsel, in

---

[2]The Massachusetts Bar Association adopted a minimum fee schedule in 1967, which provided guidance to establish what it considered proper legal fees for attorney services. 2 G. Newhall, Settlement of Estates § 278 n.26, at 139-140 (4th ed. 1958 & Supp. 1993). The schedule was withdrawn in 1973. *Id.*

violation of Canon One, DR 1-102 (A) (4)[,] (5), and (6);[3]

"(2) charged and attempted to collect a grossly excessive fee, in violation of Canon Two, DR 2-106(A) and (B);[4]

"(3) failed to seek the lawful objectives of his client and prejudiced and damaged [the complainant] during the course of the professional relationship, in violation of Canon Seven, DR 7-101 (A) (1) and (3)."[5]

The respondent contests several aspects of the findings of fact and conclusions of law made by the committee and adopted by the panel and the board. His assertions essentially culminate in a broad argument that the conclusions were not supported by substantial evidence and he urges us to credit his version of events over the complainant's. The committee, however, is the "sole judge of the credibility of the testimony presented at the hearing." *Matter of Saab,* 406 Mass. 315, 328 (1989), quoting S.J.C. Rule 4:01, § 8 (3), as appearing in 381 Mass. 784 (1980). *Matter of*

---

[3]Supreme Judicial Court Rule 3:07, Canon 1, DR 1-102 (A) (4), (5), and (6), as appearing in 382 Mass. 769 (1981), states: "(A) A lawyer shall not: . . . (4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation. (5) Engage in conduct that is prejudicial to the administration of justice. (6) Engage in any other conduct that adversely reflects on his fitness to practice law."

[4]Supreme Judicial Court Rule 3:07, Canon 2, DR 2-106 (A) and (B), as appearing in 382 Mass. 772 (1981), states: "(A) A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee. (B) A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence, experienced in the area of the law involved, would be left with a definite and firm conviction that the fee is substantially in excess of a reasonable fee. . . ."

[5]Supreme Judicial Court Rule 3:07, Canon 7, DR 7-101 (A) (1) and (3), as appearing in 382 Mass. 784 (1981), states: "(A) A lawyer shall not intentionally: (1) Fail to seek the lawful objectives of his client through reasonably available means permitted by law and the Disciplinary Rules . . . . (3) Prejudice or damage his client during the course of the professional relationship . . . . "

*Provanzano*, 5 Mass. Att'y Discipline Rep. 300, 303-304 (1987). In appropriate circumstances we will review the record to determine whether the single justice's decision is supported by sufficient evidence, free from errors of law, and free from any abuse of discretion. *Matter of Kenney*, 399 Mass. 431, 434 (1987).

The respondent argues that he did not charge a clearly excessive fee and, therefore, did not violate any of the disciplinary rules. He claims prejudicial error because the committee did not make a finding of what would have been a reasonable fee for the necessary attorney services that he performed. He contends that his fee was reasonable because it is consistent with rates set under the former MBA fee schedule for nonprobate estate proceedings.

Although these arguments fail, the more important consideration is that they are beside the point. The committee found that the respondent intentionally induced the complainant to retain him for full probate of her husband's estate so that he could realize unwarranted and excessive legal fees for himself and his firm. Moreover, the fee was unrelated to the hourly rate that the respondent had agreed to charge. Disciplinary Rule 2-106 prohibits charging a clearly excessive fee. Since the probate of the estate was unnecessary, the finding was clearly warranted that the fee for probating the estates was excessive.[6]

Neither was it error for the committee to conclude in the absence of expert testimony that the respondent needlessly probated the will. Expert testimony is unnecessary to prove ethical violations. *Matter of Saab*, *supra* at 329. Neither did the presence of the complainant's son at the time of the interview have any impact on the respondent's duty accurately to inform the complainant of her options.

---

[6]The respondent has extended this argument to the other ethical violations by asserting that, since he did not charge an excessive fee, he could not have violated the other rules. Since we have determined that the respondent did charge an excessive fee, his remaining arguments are without merit.

The respondent argues that his misrepresentations to the Probate Court were not material and, therefore, did not violate the disciplinary rules. None of the case law cited by the respondent supports his position. Furthermore, any "conduct involving dishonesty, fraud, deceit, or misrepresentation" is prohibited. DR 1-102 (A). The finding that the respondent made false and fraudulent representations to the Probate Court, to the complainant and her family, and to bar counsel provides a proper basis to establish a violation of DR 1-102 (A) (4), (5), and (6).

Finally, the respondent argues that he was denied due process because he did not have the same rights of discovery as bar counsel. He makes no claim, however, that he sought discovery orders from the committee which were denied or that the committee prevented him from utilizing discovery tools.

"There is no doubt that [the respondent] has a constitutionally protected interest in his license to practice law and that he must be afforded due process of law before he can be deprived of that interest." *Matter of Kenney, supra* at 435. Parties to judicial or quasi judicial proceedings, however, are not entitled to pretrial discovery as a constitutional right. *In re Herndon,* 596 A.2d 592, 594 (D.C. 1991). "The right to discovery stems from statutes or court rules providing for discovery." *Id.*

There is authority for the proposition that an administrative agency must grant discovery to a party in a contested case regardless of whether the enabling statute or agency rules provide for it, if refusal to grant discovery would so prejudice the party as to amount to a denial of due process. *In re Herndon, supra* at 595. See *P.S.C. Resources, Inc.* v. *NLRB,* 576 F.2d 380, 386 (1st Cir. 1978).

Here, however, the board's rules provide for discovery or production of data at prehearing conferences, and for depositions with the approval of the hearing committee. The respondent failed to seek any discovery orders through these avenues. Board of Bar Overseers Rules §§ 3.24-3.26, 4.9 and 4.10 (1993). Since the respondent failed to request discovery,

he cannot now claim he was denied due process.

Having reviewed the record and the respondent's arguments, we conclude that the single justice's decision is supported by sufficient evidence, free from errors of law, and free from any abuse of discretion. See *Matter of Kenney*, *supra* at 434.

We next turn to the issue whether the sanction imposed by the single justice was appropriate. The applicable standard for evaluating an appeal from a sanction imposed by a single justice is whether the sanction is " 'markedly disparate' from the judgments in comparable cases." *Matter of McCarthy*, 416 Mass. 423, 428 (1993), quoting *Matter of Neitlich*, 413 Mass. 416, 421 (1992). *Matter of Palmer*, 413 Mass. 33, 37-38 (1992). *Matter of Saab*, *supra* at 325. *Matter of Alter*, 389 Mass. 153, 156 (1983). "In applying this standard, it is appropriate for us to consider the cumulative effect of the several violations committed by the respondent." *Matter of Palmer*, *supra* at 38. Moreover, we are mindful that the board's recommendation is entitled to substantial deference. *Id.* at 40. *Matter of Alter*, *supra* at 157-158.

We have reviewed the cases relied on by the respondent and conclude that most of them involve conduct that was less egregious than the respondent's or that special mitigating circumstances dictated lesser sanctions.[7] In cases that we feel

---

[7]See *Matter of Dawkins*, 412 Mass. 90, 97 (1992) (six-month suspension for deliberately misusing client's funds thereby causing his client to be temporarily deprived of his liberty pursuant to capias); *Matter of Todrin*, 8 Mass. Att'y Discipline Rep. 236 (1992) (public censure imposed for unintentionally commingling clients' funds but where attorney returned funds by payments over five-month period and had instituted new accounting procedures to prevent recurrence); *Matter of Steadman*, 8 Mass. Att'y Discipline Rep. 224, 225 (1992) (public censure with probation for two years under supervision of peer review monitor where attorney did not file claim with Industrial Accident Board but without prejudice to client settled workers' compensation case with employer and signed release for client without client's consent; advanced money to client); *Matter of Sandelli*, 8 Mass. Att'y Discipline Rep. 209, 210 (1992) (public censure imposed for simultaneous representation of multiple clients with differing interests without full disclosure and with inadequate representation of one party; but no personal financial interest in any of transactions apart from his legal fees and no evidence of dishonest conduct); *Matter of Fairbanks*,

more closely approximate the facts before us, however, this court has generally imposed a sanction of less than three years' suspension.[8] For example, in *Matter of Neitlich*, 413

---

8 Mass. Att'y Discipline Rep. 83 (1992) (public censure where attorney paid himself trustee's fees totalling $1,300 from two trusts he was administering and failed to report same to firm; paid from trust second attorney to represent member of family of third trust and told attorney not to report fee to firm; repaid firm when confronted by managing partner); *Matter of Cohen*, 8 Mass. Att'y Discipline Rep. 52, 52-53 (1992) (public censure for commingling funds and not keeping sufficient balance in account at all times to maintain adequate funds to clear client's title to property); *Matter of Benjoya*, 8 Mass. Att'y Discipline Rep. 20, 21 (1992) (one-year suspension for sharing legal fees with nonlawyer in exchange for nonlawyer's funding expenses of medical malpractice case; knowingly withdrawing and spending client's funds erroneously deposited by bank into client trust account instead of client's personal account; delay in disbursing clients' funds).

[8] A review of our recent cases reveals that in a majority of cases that have resulted in three-year suspensions, the respondent had been convicted of a crime from which discipline proceedings arose. See *Matter of Knox*, 412 Mass. 569 (1992) (pleaded guilty to conspiracy and structuring currency violations ["money laundering"] and used client trust accounts to conceal large amounts of cash knowing he was concealing illegal drug profits); *Matter of Weissman*, 8 Mass. Att'y Discipline Rep. 262, 262 (1992) (pleaded guilty to possession of marihuana with intent to distribute, possession of hashish with intent to distribute, and possession of cocaine); *Matter of Jackson*, 8 Mass. Att'y Discipline Rep. 111, 111-113 (1992) (pleaded guilty to operating under influence and driving to endanger; made unsolicited calls to teenage girls; agreed to represent three different criminal defendants, collected "nonrefundable" fees, neglected matters, and then refused to return unearned fees); *Matter of Crowley*, 6 Mass. Att'y Discipline Rep. 75, 75-76 (1989) (convicted of distributing cocaine to minor).

Those attorneys who had not been convicted of crime yet received three-year suspensions demonstrated a pattern of neglect and deceit or misused substantial sums of clients' funds. See *Matter of Barnes*, 8 Mass. Att'y Discipline Rep. 8, 9-10 (1992) (commingled personal and business funds with clients' funds; violated terms of an escrow agreement; failed to notify client promptly of receipt of funds on client's behalf; misrepresented to his client status of funds; deprived client of his funds; failed to safeguard funds and keep them intact; failed to keep adequate records as to receipt, maintenance, and distribution of funds belonging to his client; and signed his client's name to check without authority); *Matter of Poole*, 6 Mass. Att'y Discipline Rep. 263, 263-264 (1990) (failed to file suit in three cases; failed to file suit within applicable statute of limitations in another case; failed to answer interrogatories in another case; made extensive misrepresentations and falsehoods to clients, bar counsel, and hearing commit-

Mass. 416, 420 (1992), this court sustained a one-year sus-
pension where the respondent failed to make full disclosure
as ordered by the court and where his misrepresentations to
the Probate Court and opposing counsel constituted "know-
ing concealment" and were "deliberate, planned attempts . . .
to conceal from the Court and his opponent the full terms of
[a] proposed sale." Similarly, in the *Matter of Palmer, supra*
at 33, we imposed a public censure on an attorney who,
"while acting as executor and attorney for an estate, charged
a clearly excessive fee, filed a probate account containing
misrepresentations and inaccurate statements as to amounts
received and expended by the estate, and neglected a legal
matter pertaining to the estate." In *Matter of Aronson*, 3
Mass. Att'y Discipline Rep. 13, 17 (1982), the single justice
imposed a two-year suspension on an attorney who filed a
false affidavit in an effort to collect funds from the Superior
Court for representing an indigent client despite having been
paid by his client's family. In *Matter of Pike*, 408 Mass.
740, 745 (1990), we imposed a six-month suspension on an
attorney who represented a client-lessee and the client's les-
sor without disclosing to the lessee that he received a com-
mission from the lessor. Finally, we recently imposed a one-
year suspension on an attorney who: elicited false, sworn tes-
timony from his client; submitted in evidence false docu-
ments; and failed to correct the record at an eviction hearing
before a rent control board when he had an opportunity to do
so. *Matter of McCarthy, supra.*

In the instant case, the respondent's inducement of his cli-
ent to retain him for unnecessary services and his willingness
to place his own financial interest above his client's right to
dispassionate professional advice cuts to the heart of the at-
torney-client relationship and is a "serious breach" of his du-
ties. *Matter of Pike, supra* at 745. His misrepresentations to

tee); *Matter of Cotter*, 5 Mass. Att'y Discipline Rep. 86 (1988) (converted
clients' funds; failed to maintain reasonable contact with clients; failed to
file case within applicable statute of limitations; practiced law while under
administrative suspension; and withdrew from employment without re-
funding unearned fee).

the court and charging an excessive fee would each separately warrant at least a public censure. *Matter of Palmer*, *supra* at 38-39. Additionally, the board's consideration of the respondent's discipline history, a private censure for neglect of a legal matter in 1980, was "entirely appropriate." *Matter of Anderson*, 416 Mass. 521, 525 (1993). See also *Matter of Saab*, *supra* at 327. Moreover, he presents no special mitigating circumstances. See *Matter of Anderson*, *supra* at 527 (only "extraordinary mitigating circumstances" should affect sanction otherwise warranted by attorney's conduct). We reject the respondent's assertion that his conduct in dropping his petition for counsel fees, with prejudice, should mitigate his sanction. Where an attorney has induced a client to retain him for unnecessary legal services and charged an excessive fee, his prudence in dropping his petition for counsel fees will not reduce the appropriate sanction.

While this case most closely resembles *Matter of Palmer*, *supra*, the respondent's conduct was significantly more egregious in that he intentionally and fraudulently induced the complainant to retain him for unnecessary probate services. The serious nature of the respondent's cumulative ethical violations and his past disciplinary record clearly warrant a suspension. However, we disagree with the length of the suspension imposed by the single justice. Accordingly, we direct that a judgment suspending the respondent from the practice of law for eighteen months be entered in the Supreme Judicial Court for the county of Suffolk.

*So ordered.*