## IN THE MATTER OF MICHAEL G. MOORE.

Suffolk. April 9, 2004. - August 9, 2004.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, SOSMAN, & CORDY, JJ.

*Attorney at Law,* Disciplinary proceeding, Bar application, Suspension.

On appeal by an attorney at law from a judgment of a single justice of this
court ordering that the attorney be disbarred from the practice of law for
lying on his bar application, the full court concluded that the judgment of
the single justice was markedly disparate from the usual results in similar
cases [290-291, 292-294], that extraordinary mitigating factors were absent
that would have affected a sanction otherwise warranted by the attorney's
conduct [294], and that aggravating factors took this case beyond the short
suspensions usually imposed in bar application cases [294-295];
consequently, the full court ordered the attorney suspended from the
practice of law for a period of two years [295]. SOSMAN, J., dissented.
In a disciplinary proceeding brought against an attorney for lying on his bar
application, the findings and credibility determinations made by the hear-
ing committee of the Board of Bar Overseers and adopted by the board
were supported by substantial evidence. [291-292]

INFORMATION filed in the Supreme Judicial Court for the county
of Suffolk on June 12, 2003.

The case was heard by *Cowin,* J.

*S. Thomas Martinelli* for the respondent.

*Terence M. Troyer,* Assistant Bar Counsel.

IRELAND, J. A single justice of this court ordered that Michael
G. Moore (respondent) be disbarred from the practice of law for
lying on his bar application. The respondent appeals from the
sanction imposed as being too harsh and "markedly disparate"
from sanctions imposed in similar cases. Because we conclude
that, in light of our disposition of similar cases, the respondent's
conduct warrants suspension, not disbarment, we order that the
respondent be suspended from the practice of law for two years.

*Background.*

Bar counsel initiated this matter by a petition for discipline

alleging that, by making misrepresentations on his Massachusetts bar application and certifying that the answers were truthful, the respondent violated S.J.C. Rule 3:07, Canon 1, DR 1-101 (A), and DR 1-102 (A) (4), (5), and (6), as appearing in 382 Mass. 769 (1981).[1] The respondent denied that he intended to deceive, and asserted that the answers he gave on his application were, literally speaking, correct. The hearing committee found that the respondent violated each of the cited disciplinary rules and recommended that the respondent be disbarred. The respondent appealed to the Board of Bar Overseers (board).

An appeal panel of the board adopted the hearing committee's findings of fact and conclusions of law, but modified the suggested disposition, recommending instead an eighteen-month suspension. Both bar counsel and the respondent filed objections to the appeal panel's report. A majority of the board adopted the appeal panel's report and its recommendation of an eighteen-month suspension. Two board members preferred greater, but unspecified, discipline. The respondent requested that the single justice revise the findings of the hearing committee to exonerate him or, alternatively, that she impose a one-month or two-month suspension. Bar counsel recommended disbarment.[2] The single justice entered a judgment of disbarment. This appeal followed.

*Facts.*

We summarize the findings of fact made by the hearing committee after an evidentiary hearing at which the respondent and several others testified and numerous exhibits were received in evidence. After the respondent was admitted to the Connecticut bar in 1975, he was employed by an attorney in Tolland, Connecticut, who operated a collection agency. Within six months,

---

[1] S.J.C. Rule 3:07, Canon 1, DR 1-101 (A), as appearing in 382 Mass. 769 (1981), prohibits the making of materially false statements in, or deliberately failing to disclose material facts requested in connection with, application for admission to the bar. S.J.C. Rule 3:07, Canon 1, DR 1-102 (A) (4), (5), and (6), as appearing in 382 Mass. 769 (1981), prohibit, respectively, conduct involving dishonesty, fraud, deceit, or misrepresentation; conduct prejudicial to the administration of justice; and conduct adversely reflecting on fitness to practice law.

[2] Bar counsel originally sought suspension for "a year and a day," but later changed his position and sought disbarment as recommended by the hearing committee.

that attorney filed formal charges of misconduct against the respondent. A grievance committee heard evidence that would have supported a finding that the respondent had forged a clerk's name on an execution of a nonexistent judgment, held himself out as a court clerk by signing two other executions, and failed to remit funds to clients. Criminal charges (forgery, larceny, and criminal impersonation) were also filed. The respondent ultimately agreed to resign from the bar. As a result, the grievance committee terminated its investigation and the prosecutor dropped the criminal charges.

The respondent sought reinstatement in 1981, but failed to sustain his burden of proving good moral character.[3] In particular, the three-judge panel of the Connecticut Superior Court found that the respondent's testimony in support of his application for readmission "seem[ed] to indicate that he lacks a full appreciation of the fact that the profession of law is a high calling, and of the serious obligations assumed thereby as an officer of the court and as the confidential manager of the affairs and business of others entrusted to his care." In 1982, despite the fact that he had not been readmitted, the respondent entered an appearance in a Connecticut court on behalf of a corporation in which he had an interest. In response, the Connecticut Superior Court entered an injunction "prohibiting [the respondent] from engaging in the unauthorized practice of law in the state of Connecticut" and fined him $750 for the unauthorized practice of law. The respondent has never been readmitted to the bar of Connecticut.

In January, 1994, the respondent sought admission to the bar of Massachusetts. He passed the Massachusetts bar examination on his second attempt and was admitted to practice law in Massachusetts in December, 1994. His original application and his supplementary application (filed in June, 1994) required the respondent to answer certain questions. He indicated that he had

---

[3]The respondent resigned under a then-existing Connecticut practice allowing an attorney subject to a pending misconduct charge to resign effective immediately, rather than await the result of the grievance committee's investigation, by waiving the privilege of applying for readmission at any future time. When he sought readmission, the respondent challenged this waiver. A three-judge panel of the Connecticut Superior Court held that the earlier waiver did not bar the respondent's application for readmission.

been admitted to practice in Connecticut and to the United States District Court for the District of Connecticut. Because the respondent's answers to certain questions form the basis of the present disciplinary proceeding, we discuss them in some detail. Both the original and the supplementary applications required the respondent to certify that each of the answers he provided "is true, complete, and candid."[4]

Question 10 (a) asked, "Have you ever been disbarred, suspended, reprimanded, censured, or otherwise disciplined or disqualified as an attorney, or as a member of any other profession, or as a holder of any public office?" Despite his resignation during disciplinary proceedings, the denial of readmission, and the injunction (all orders or actions by which the respondent was "otherwise disciplined or disqualified as an attorney"), the respondent answered, "No." The hearing committee found that the respondent's answer to this question was deliberately false, made with the intent to deceive.

Question 11 asked if the respondent, within the past seven years, had been convicted of conduct deemed to be a felony in the jurisdiction where judgment was rendered. The respondent (truthfully) answered, "No." Question 12 asked, "Have you ever been a party in any non-criminal legal proceeding not covered by Question 11 other than divorce or separate maintenance?" The respondent again answered, "No." The hearing committee found that this answer was false and made with intent to deceive. In 1993, the respondent had filed a civil action in the United States District Court for the District of Connecticut against a community college where he had been an adjunct professor, alleging wrongful termination based on age discrimination. The college's defense was that the respondent's contract was not renewed due to problems with his teaching and two complaints of sexual harassment against him.

The respondent's position before the hearing committee (and before the board) was that his answers to the questions were responsive to the precise language of the questions and, read

---

[4]For simplicity, we quote from the original application. The respondent gave the same answers to parallel questions on the supplementary statement.

literally, accurate.[5] The hearing committee rejected the respondent's explanation for his answers as "lacking in candor and unworthy of belief," basing this finding on its evaluation of the respondent's testimony and demeanor, as well as its belief that the respondent's answers "demonstrate a consistent pattern of omitting any information which might reveal his resignation from the Connecticut bar, which might otherwise prove embarrassing to him, or which might induce the [Board of Bar Examiners] to begin an investigation." It also found that he had omitted reference to the discrimination suit to prevent the Board of Bar Examiners from learning that charges of sexual harassment had been filed against him.

In addition, the bar application required the respondent to list all employment and any business or profession in which he had engaged since his eighteenth birthday. The respondent listed three periods of employment that appeared to be a complete and continuous list of employment since 1973. However, he did not list (1) his employment as a lawyer at the collection agency in 1975, (2) his service as a lawyer in the Judge Advocate General's Corps of the United States Army in 1976, a position from which he resigned when the Army learned that there was an outstanding warrant for the respondent's arrest in Connecticut (on the charges arising from his employment with the collection agency), (3) his operation of a restaurant in Waterbury, Connecticut, in connection with which he was fined for the unauthorized practice of law (and charged with, but acquitted of, arson), or (4) his employment at the community college he sued. The hearing committee found that the respondent's answers regarding his employment were "incomplete, deceptive, and adapted to prevent the [Board of Bar Examiners] from

---

[5]For example, the respondent testified that Question 12 led him back to Question 11. Because Question 11 incorporated a "statute of limitations," and because it sought information concerning criminal cases where he was a defendant, the respondent imported these features to Question 12. He claimed, therefore, that Question 12 sought only information concerning cases in which he was a defendant, not a plaintiff. Thus, pursuant to the respondent's reasoning, he was not required to report the discrimination case, because he was a plaintiff, not a defendant, in that case. He claimed that he did not have the intent to deceive. The wording of Question 12, however, is unambiguous: it asks whether the applicant had ever been a "party" to a legal proceeding, and nothing in the question suggests any limitation on the term "party."

obtaining information embarrassing to the respondent or which might interfere with his admission to the Massachusetts Bar."[6]

In sum, the hearing committee determined that the respondent was simply not credible in denying that he had an intent to deceive. The committee determined that "[t]he respondent's efforts to reinterpret and recharacterize the questions of the bar application in order to justify his withholding clearly relevant and specifically requested information only demonstrate[d] his penchant for mendacity. The respondent acted deliberately and intentionally in constructing his answers to the questions . . . ." The hearing committee concluded that the respondent's answers to Questions 10 (a) and 12, and his false certification that the answers were truthful, complete, and candid, violated DR 1-101 (A) and DR 1-102 (A) (4), (5), and (6).[7] In aggravation of the respondent's misconduct, the hearing committee found that the respondent "displayed duplicity and lack of candor before [it]." The hearing committee went on to note: "It is our distinct impression that the respondent has failed to recognize the gravity of his misconduct and take responsibility for it and lied to the [c]ommittee." It recommended that the respondent be disbarred.

*Discussion.*

1. *Standard of review.* The standard of review when disciplinary sanction imposed by a single justice is challenged is whether the sanction "is markedly disparate from judgments in comparable cases." *Matter of Foley*, 439 Mass. 324, 333 (2003), quoting *Matter of Finn*, 433 Mass. 418, 422-423 (2001).[8] Our review of the single justice's order is de novo, but "tempered with

---

[6]The respondent contends that his answers were not improper because "the question did not call for *all* employment."

[7]The hearing committee found no rule violation in the respondent's answers to questions regarding bar admissions. Asked for names of jurisdictions and courts to which he had been admitted to practice, the respondent listed Connecticut and the Federal District Court in Connecticut. The hearing committee concluded that the respondent was not required to provide information as to his resignation from the Connecticut bar in response to these questions, and thus the answers did not violate a disciplinary rule.

[8]Where the circumstances of the case are unique or involve the matter of first impression, we "review the decision of the single justice to determine whether it is supported by sufficient evidence, constitutes an abuse of discretion, and is free from any error of law." *Matter of Foley*, 439 Mass. 324, 333

substantial deference to the board's recommendation." *Matter of Foley, supra.* See *Matter of Finn, supra* at 423; *Matter of Tobin,* 417 Mass. 81, 88 (1994).[9] Our role, therefore, is to examine the nature of the respondent's conduct, and compare the sanction imposed by the single justice to the sanctions imposed in analogous cases, taking into account the board's recommendation and any mitigating factors that may be present.

Ultimately, we decide each bar discipline case on its own merits to ensure that "every offending attorney . . . receive[s] the disposition most appropriate in the circumstances." *Matter of Foley, supra,* quoting *Matter of the Discipline of an Attorney,* 392 Mass. 827, 837 (1984). The primary factor in that determination is "the effect upon, and the perception of, the public and the bar." *Matter of Foley, supra,* quoting *Matter of Kerlinsky,* 428 Mass. 656, 664, cert. denied, 526 U.S. 1160 (1999). "We must consider what measure of discipline is necessary to protect the public and deter other attorneys from the same behavior." *Matter of Foley, supra,* quoting *Matter of Concemi,* 422 Mass. 326, 329 (1996).

2. *Substantial evidence.* We first consider the respondent's claim that many of the findings and credibility determinations made by the hearing committee and adopted by the board were erroneous, unsupported by the evidence, and "fatally flawed by . . . insubstantial, inconclusive and prejudicial information it accepted as evidence." We disagree.

The standard of review applicable to the board's findings is whether there was substantial evidence to support the findings. S.J.C. Rule 4:01, § 8 (4), as appearing in 425 Mass. 1309 (1997). See *Matter of Abbott,* 437 Mass. 384, 393-394 (2002), and cases cited. The disputed findings were made on ample evidence and were based in large part on the credibility determinations of the hearing committee. The hearing committee was in the best position to make such a determination. We

(2003), quoting *Matter of McInerney,* 389 Mass. 528, 530 (1983). Because we conclude that "there are comparable cases in Massachusetts, we apply the markedly disparate standard." *Matter of Finn,* 433 Mass. 418, 423 (2001).

[9] In applying this standard, we consider "the cumulative effect of the several violations committed by the respondent." *Matter of Finn, supra,* quoting *Matter of Tobin,* 417 Mass. 81, 88 (1994).

do not disturb those findings. See *id.* at 394; *Matter of Wise*, 433 Mass. 80, 87 (2000); *Matter of Saab*, 406 Mass. 315, 328 (1989), quoting S.J.C. Rule 4:01, § 8 (3), as appearing in 381 Mass. 784 (1980) ("Our rules concerning bar discipline . . . accord to the hearing committee the position of 'the sole judge of the credibility of the testimony presented at the hearing' ").[10] Furthermore, we reject as meritless the respondent's objection to the admission in evidence of the documents related to the Connecticut bar proceedings, the Connecticut Superior Court's denial of the respondent's application for reinstatement, the restraining order entered against him for the unauthorized practice of law, and the civil action he failed to disclose on his Massachusetts application. These documents, the authenticity of which the respondent does not dispute, were relevant to the disciplinary proceeding before the hearing committee.

3. *Appropriate sanction.* a. *Bar application cases.* While we reject the respondent's objections to the hearing committee's conclusions of law, we do believe disbarment would be a "markedly disparate" sanction for the misconduct found. See, e.g., *Matter of Alter*, 389 Mass. 153, 156 (1983). None of our cases involving misrepresentations on bar applications resulted in disbarment, and the more usual sanctions have been measured in months, not years. In *Matter of Finn*, 433 Mass. 418, 421-422 (2001), the respondent, a Massachusetts attorney, was suspended for three months where, in connection with his Georgia bar application, he intentionally falsely stated that he had never received a student loan, and acted with reckless disregard for the truth in response to a question whether he had

---

[10]To the extent that the respondent argues that he should be absolved because he answered in literal compliance with a viable interpretation of the questions, we do not agree. The respondent certified that his answers were "true, complete, and candid" when, in actuality, they were incomplete and made with intent to mislead and deceive. As the appeal panel and the single justice noted, the disciplinary rules prohibit more than "outright perjury." They proscribe conduct involving dishonesty, fraud, deceit, or misrepresentation, conduct prejudicial to the administration of justice, and conduct that adversely reflects on the fitness to practice law. By deliberately concealing several incidents in his past, with the intent to deceive the Board of Bar Examiners and prevent it from obtaining information relevant to his moral fitness to practice law, the respondent violated DR 1-101 (A) and DR 1-102 (A) (4), (5), and (6).

ever defaulted on a student loan.[11] In *Matter of McGarvey*, 15 Mass. Att'y Discipline Rep. 390, 391-392 (1999), the respondent, who also was a licensed registered nurse, was suspended for two months for (1) answering "no" to a question similar to Question 10 (a) here, when in reality she voluntarily surrendered her nursing license in lieu of an administrative hearing and was placed on probation by the board of registration in nursing for mishandling controlled substances, and (2) failing to include in her bar application any reference to her employment at the time of that incident. In *Matter of Ruzzo*, 10 Mass. Att'y Discipline Rep. 233, 233 (1994), the respondent was suspended for one month because he did not disclose that he had applied to practice law in Pennsylvania (in response to a question requiring him to list all jurisdictions where he had applied) and answered "no" to a question like Question 12 here, when in fact he had been a party to proceedings before the Supreme Court of Pennsylvania, appealing from the denial of his application. In *Matter of Donovan*, 13 Mass. Att'y Discipline Rep. 142, 143-144 (1997), the respondent was suspended for eighteen months for failing to disclose on her bar application that she had been under investigation for student loan fraud for two years, where the form of petition for admission did not require disclosure of the pendency of any investigation into possible criminal charges, and the attorney did not volunteer information about the investigation.[12]

To support its recommendation that the respondent be disbarred, bar counsel relies on *Matter of Marshall*, 16 Mass. Att'y Discipline Rep. 293 (2000), where the respondent, a Massachusetts attorney, applied for admission to the Arizona bar. *Id.* at 293-294. Her application was denied because the law school she had attended was not accredited by the American Bar Association and she had not practiced in Massachusetts for five

---

[11]The respondent also violated other disciplinary rules by engaging in the practice of law in Georgia when he was not admitted there, misrepresenting that he was eligible to practice, distributing a business card with deceptive statements, using stationery with a deceptive letterhead, and failing properly to document the handling of client funds. *Matter of Finn, supra* at 422.

[12]She knew that she was the subject of grand jury proceedings when she filled out the Massachusetts bar application. *Matter of Donovan*, 13 Mass. Att'y Discipline Rep. 142, 143-144 (1997).

years. *Id.* at 294. She reapplied, intentionally and fraudulently misrepresenting her identity as that of another Massachusetts attorney with a nearly identical name. *Id.* In support of this duplicity, she submitted fabricated and fraudulently procured documents. *Id.* Her misconduct came to light and, in addition, the hearing committee found that in aggravation, the respondent "had engaged in a pattern of misconduct that reflected planning and premeditation." *Id.* at 295. She was indefinitely suspended. Matter of Marshall, BD-2000-059 (Nov. 21, 2000).

b. *Evidence in mitigation and aggravation.* While it is "appropriate to consider mitigating factors" in determining what sanction to impose, *Matter of Finn,* 433 Mass. 418, 424 (2001), "[o]nly extraordinary mitigating circumstances should affect a sanction otherwise warranted by an attorney's conduct." *Matter of Anderson,* 416 Mass. 521, 527 (1993). Contrary to the respondent's assertion, the absence of any complaints against the respondent since he was admitted to practice in Massachusetts is a "typical" mitigating factor that does not warrant a reduction in his sanction. *Matter of Finn, supra* at 425, and cases cited. Similarly, the respondent's good reputation in the community is a "typical" mitigating factor that warrants no change in disposition. *Matter of Alter,* 389 Mass. 153, 157 (1983). See *Matter of Anderson, supra,* quoting *Matter of Dawkins,* 412 Mass. 90, 96 (1992) ("we are not so pessimistic about the ethics of lawyers as to conclude that a lawyer who conforms to the expected standard of conduct in some respects thereby has established mitigating circumstances"). Finally, we reject the respondent's claim that his services to an under-served population (illegal immigrants) should be considered a mitigating factor. *Matter of Finn, supra* ("However commendable his service has been, and however much the temporary loss of that service will burden an under-served community, this is not an appropriate mitigating factor"). See *Matter of Modica,* 5 Mass. Att'y Discipline Rep. 258, 259-260 (1988) (refusing to treat case differently because of attorney's bilingual capabilities and legal services to poor "as to do so suggests that a lesser standard of integrity would be allowed or appropriate for [attorneys representing] these clients").

The hearing committee made findings in aggravation that

take this case beyond the short suspensions usually imposed in the bar application cases. The committee found (and the single justice agreed) that the respondent failed to appreciate the gravity of his misconduct and lied to the committee — both appropriate factors to weigh in aggravation. See, e.g., *Matter of Eisenhauer*, 426 Mass. 448, 457, cert. denied, 524 U.S. 919 (1998) (attorney's lack of candor before hearing committee "further compounded his transgressions"); *Matter of Clooney*, 403 Mass. 654, 657 (1988) (attorney's "persistent assertions that he did nothing wrong . . . demonstrated that he 'continue[d] to be unmindful of certain basic ethical precepts of the legal profession' ").

c. *Disposition*. Although we note that this case is distinguishable from the identity theft committed by the respondent in *Matter of Marshall, supra,* we also emphasize the gravity of misconduct consisting of misrepresentations made on the respondent's bar application. "There can be no tolerance in our system of justice for deception." *Matter of Provanzano*, 5 Mass. Att'y Discipline Rep. 300, 304 (1987). Whether an individual is of good moral character and fit to practice law in the Commonwealth is a most serious issue. Questions exploring this issue are not to be answered by gamesmanship. Bar applicants should always err on the side of full disclosure. If the meaning or scope of a particular bar application question is unclear to them, they should contact the Board of Bar Examiners to ascertain exactly what information is being sought in response to that question.

Solely in light of our precedent, we conclude that the appropriate sanction falls between the short suspensions usually imposed in bar application cases and the indefinite suspension entered in Matter of Marshall, BD-2000-059 (Nov. 21, 2000). We believe that the right balance would be struck by the imposition of a two-year suspension. However, we note that in the future, we intend to impose much harsher sanctions, including disbarment, "to address the seriousness of the misconduct, to reassure the bar and the public that such conduct is completely contrary to the oath of office taken by every lawyer, and to underscore that, when it is uncovered, such conduct will be treated with the utmost severity." *Matter of Foley*, 439 Mass. 324, 339 (2003).

*Conclusion.*

For the reasons stated above, we conclude that the judgment ordered by the single justice is markedly disparate from the results in similar cases. We, therefore, vacate the order of the single justice and remand this matter for entry of a judgment suspending the respondent from the practice of law for a period of two years.

*So ordered.*

SOSMAN, J. (dissenting). I agree with the single justice — and with the hearing committee — that the falsehoods on this particular application for admission to the bar were so pervasive, and the respondent's current dishonesty so apparent, as to make disbarment, not merely suspension, the appropriate sanction.

The court today imposes a lesser sanction, feeling compelled to do so by the fact that lesser sanctions have been imposed in other cases involving lack of candor on an application for admission to the bar. *Ante* at 292-293, 295. In those cases, the respondent's false statements or omissions essentially sought to cover up a single prior misdeed, a misdeed that (if known) might or might not have resulted in a denial of admission to the bar. See *Matter of Finn*, 433 Mass. 418, 421-422 (2001) (false statement about student loan on which applicant had defaulted); *Matter of McGarvey*, 15 Mass. Att'y Discipline Rep. 390, 391-392 (1999) (failure to disclose discipline stemming from applicant's alleged mishandling of controlled substances while working as nurse); *Matter of Donovan*, 13 Mass. Att'y Discipline Rep. 142, 143-144 (1997) (failure to disclose pending investigation for student loan fraud); *Matter of Ruzzo*, 10 Mass. Att'y Discipline Rep. 233 (1994) (failure to disclose that application for admission in another jurisdiction had been denied).

In the present case, multiple and repeated false statements on the respondent's application were made with the intent that the bar examiners remain ignorant of many facets of his checkered past: (1) disciplinary proceedings and criminal charges in Connecticut (ultimately resolved by his resignation from the bar) based on allegations that the respondent had forged court docu-

ments (including forgery of a clerk's signature on one such document, and signing his own name as if he were the clerk on two others) and mishandled client funds; (2) the respondent's failure to establish his good moral character when he subsequently sought readmission to the bar of Connecticut; (3) the respondent's unauthorized practice of law after his readmission had been denied, resulting in an injunction and fine; and (4) recent allegations of sexual harassment at the community college where the respondent taught. Had the respondent been truthful in his answers on the bar application, these prior incidents would not necessarily have precluded his admission to the Massachusetts bar, but he would have had to establish his good moral character and demonstrate the requisite rehabilitation, see *Matter of Prager*, 422 Mass. 86, 91-92 (1996), a task that could charitably be described as difficult and doubtful of success. See *Matter of an Application for Admission to the Bar*, 431 Mass. 678 (2000) (admission denied to applicant who failed to file tax returns and fraudulently applied for and received unemployment compensation); *Matter of an Application for Admission to the Bar*, 378 Mass. 795 (1979), cert. denied, 444 U.S. 1046 (1980) (admission denied to applicant who filed complaints with the Board of Bar Overseers and threatened litigation against witnesses who testified adversely to her application).

The fact that this respondent's multi-faceted deception succeeded in gaining him admission to the bar (whereas candor would likely have resulted in the denial of admission) should not be used to his advantage now that the deception has been uncovered. It is a perverse message to tell bar applicants with serious misdeeds in their past that candor will risk denial of admission, but that a successful campaign of deception risks only a term suspension. Indeed, we require bar applicants with a problematic prior history to be especially forthcoming about that history.

> "It is the obligation of an applicant to assure the members of the [Board of Bar Examiners] and, ultimately, this court that he or she possesses the necessary qualifications to practice law in the Commonwealth. Such a showing requires a full and exhaustive disclosure of prior

> wrongdoing, including all relevant circumstances surrounding the conduct, both militating and mitigating, and official documentation where appropriate. It requires the same vigorous disclosure with respect to relevant conduct since the wrongdoing, in order that a determination of rehabilitation may be openly and satisfactorily made. . . . The approach should not be that of the adversarial nature of bar discipline cases, but rather should be one of cooperation by the applicant."

*Matter of Prager, supra* at 100-101, citing *In re Application of Davis*, 38 Ohio St. 2d 273, 274 (1974). Failure to abide by that standard will, if discovered in time, lead to a denial of admission. See *Corliss* v. *Board of Bar Examiners*, 437 Mass. 1023, 1024 (2002). Where, as here, that failure is only uncovered after the applicant has already been admitted to the bar, the sanction should reflect the fact that the respondent should not have been admitted to the bar in the first place.[1]

Moreover, to this day, the respondent now before us continues in his attempts to avoid the consequences of his prior actions, showing neither remorse nor insight into his misconduct, but instead displaying what the hearing committee characterized as a "penchant for mendacity." In my view, disbarment, or at least an indefinite suspension, would be the appropriate sanction. I would therefore affirm the single justice's decision to disbar the respondent, and I respectfully dissent from the court's decision to impose a significantly lesser sanction.

---

[1]While I disagree with the resolution of the case before us, I do endorse the court's announcement that, in future, "we intend to impose much harsher sanctions, including disbarment," for this type of misconduct. *Ante* at 295.